IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNA MASHER, | : | CIVIL ACTION NO. **1:CV-07-2016** |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Joanna Masher, is seeking review of the decision of the Commissioner of Social Security, ("Commissioner"), that denied her claim for Disability Insurance Benefits, ("DIB"), pursuant to Title II of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433.

**I.   PROCEDURAL HISTORY.**

The Plaintiff protectively filed an application for DIB on August 17, 2005, alleging disability since August 25, 2004, due to carpal tunnel syndrome and thoracic outlet syndrome. (R. 82-84, 94, 97). The state agency denied her claim initially and she filed a timely request for a hearing. (R. 28-35). A hearing was held before an Administrative Law Judge, ("ALJ"), on March 13, 2007. (R. 192-221). At the hearing, the Plaintiff, represented by counsel, and a vocational expert, ("VE"), testified. (R. 194-221). The Plaintiff was denied benefits pursuant to the ALJ's decision of April 18, 2007. (R. 11-22).

The Plaintiff requested review of the ALJ's decision. (R. 9-10). The Appeals Council denied her request on October 10, 2007, making the ALJ's decision the final decision of the Commissioner. (R. 3-6). 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 14 & 15).

**II.     STANDARD OF REVIEW.**

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he  is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

**III.    DISABILITY EVALUATION PROCESS.**

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520.  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged

in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  *See* 20 C.F.R. § 404.1520.

In the instant matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act.  (R. 14-22).  At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful work activity since her alleged disability onset date, August 25, 2004.  (R. 16).  At step two, the ALJ concluded that the Plaintiff's bilateral carpal tunnel syndrome and thoracic outlet syndrome were "severe" impairments within the meaning of the Regulations.  (R. 16-17).  At step three, the ALJ found that the Plaintiff does not have an impairment, or combination of impairments, severe enough to meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (R. 17).

At step four, the ALJ found that the Plaintiff is unable to perform any of her past relevant work.  (R. 20).  At step five, the ALJ found that the Plaintiff has the residual functional capacity, ("RFC"), to perform a limited range of sedentary work.  (R. 21-22). Therefore, the ALJ determined that the Plaintiff has not been under a disability, as defined in the Act, from August 25, 2004, her alleged disability onset date, through the date of the hearing decision.  (R. 25).

## IV.   BACKGROUND.

The Plaintiff was born on June 29, 1976 and was twenty-eight (28) years old on her alleged disability onset date.  (R. 20, 196).  She is considered a "younger person" under the Regulations.  (R. 20).  20 C.F.R. §§ 404.1563(c), 416.963(c).

The Plaintiff graduated high school and has past relevant work experience as a scanner/conveyor operator in a warehouse.  (R. 20-21, 196).  The Plaintiff suffers from bilateral carpal tunnel syndrome and right thoracic outlet syndrome as a result of repeatedly scanning items in a warehouse.  She receives unemployment compensation.  (R. 198).  The

Plaintiff takes care of her own personal needs and performs the household chores with the help of her husband and daughters. (R. 199, 208-09). The Plaintiff takes fifteen to twenty minute breaks in between chores. (R. 208). The Plaintiff shops with help from her husband or mother. (R. 199, 209). During the day, the Plaintiff reads and watches television. (R. 199). She sees her children off to school and then usually goes back to bed. (R. 211). The Plaintiff receives approximately seven combined hours of sleep per night and pain often interrupts her sleep. (R. 201, 210).

The Plaintiff suffers from pain and numbness in her right hand, pain under her right arm, stiffness, headaches and back pain. (R. 204-05). The Plaintiff stated that she can sit and stand for approximately twenty minutes at a time and she has no problem with walking, believing she can walk a mile. (R. 202). The Plaintiff takes medications to help control her symptoms. (R. 202-03). The medications cause tiredness and trouble thinking clearly. (R. 203). The Plaintiff tries not to use her right arm and uses a heating pad to help ease her pain. (R. 203).

The Plaintiff underwent carpal tunnel surgery in June 2003 and returned to work after the surgery in August 2003. (R. 213). The Plaintiff worked until April 2004, but then stopped working for two months due to recurring symptoms. (R. 214). She returned to work in June 2004 and worked until August 2004. (R. 214-15). The Plaintiff was unable to maintain employment and last worked in August 2004. (R. 215).

Vocational expert, Kristan Sagliocca, testified based on the *Dictionary of Occupational Titles*. (R. 216-21). The ALJ asked the vocational expert to hypothetically consider an individual of the Plaintiff's same age, education and past work experience with the ability to occasionally lift ten pounds, frequently lift less than ten pounds, with no limitations in standing, sitting or walking, with occasional climbing and balancing (but never on ladders), limited overhead reaching and feeling with the right upper extremity, she must avoid temperature extremes, vibrations and hazards and would be limited to simple, routine tasks. (R. 218). The vocational expert stated that such an individual would not be able to perform the Plaintiff's past relevant work but would be able to perform work as a hand

packer, visual inspector or basic sorter. (R. 218-19).

The ALJ then asked the vocational expert to consider that same hypothetical individual with the added restriction of limited pushing and pulling with the right upper extremity. (R. 219). The vocational expert stated that such an individual would not be able to perform the Plaintiff's past relevant work but could perform the previously identified jobs of a hand packer, visual inspector and basic sorter. (R. 219).

The ALJ lastly asked the vocational expert to consider that same hypothetical with the added restriction of requiring more than two breaks per day, plus lunch, and/or may require unscheduled breaks, may miss more than three days of work per month and/or may be off task 40% of the day. (R. 219). The vocational expert stated that such an individual would not be able to perform the Plaintiff's past relevant work or any other work in the regional or national economy. (R. 219).

## V.     DISCUSSION.

The Plaintiff argues that the ALJ erred in evaluating the opinion of treating physician Allen J. Togut, M.D., by according significant weight to the opinion of Steven Mandel, M.D., and by accepting the vocational expert's testimony. (Doc. 14 at 12).

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may

not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

The ALJ evaluated the opinions of Dr. Togut. (R. 18-19). The ALJ failed to accord significant weight to Dr. Togut's opinion of total disability finding that it was a conclusory finding based on the Plaintiff's subjective complaints, that the determination of disability is reserved to the Commissioner and the doctor's opinion is not supported by the objective medical evidence of record. (R. 19).

The defendant states that Dr. Togut relied on the Plaintiff's subjective allegations that she was unable to work and that he did not rely on the objective medical findings. (Doc. 15 at 14). The defendant states that the objective findings reveal that the Plaintiff has limited ability to use her right arm. (Doc. 15 at 14). The ALJ stated that Dr. Togut's findings are essentially a reiteration of the Plaintiff's subjective complaints and that Dr. Togut performed no diagnostic tests and made no objective finding supporting his opinion that the Plaintiff is unable to work. (R. 20). The ALJ noted that although EMG and nerve conduction studies revealed that the Plaintiff suffers from some limitations, they are not indicative of an inability to perform all work. (R. 20).

The ALJ rejected all of Dr. Togut's opinions from 2004 to 2007. (R. 20). She noted that the examination findings reveal that the Plaintiff was limited in the use of her right arm, but there are no findings revealing that the Plaintiff was limited in the use of her left arm. (R. 20). The ALJ stated that the loss of the use of one arm, even the dominant arm, does not prevent one from engaging in work activity. (R. 20). In *McNamara v. Commissioner of Soc. Sec.*, 138 Fed. App'x 424, 425, (3d Cir. July 5, 2005), the ALJ concluded that although the claimant suffered from arm impairments, he retained the RFC to perform work that involved only limited use of the arm and did not involve using the arm for any significant purpose. Here, the ALJ determined that the Plaintiff retained the RFC for sedentary work with limited pushing and pulling with the right upper extremity, no overhead reaching with the right

upper extremity and with limited feeling in the right hand. (R. 17). While the record reflects that the Plaintiff suffers from limitations as a result of her right arm impairment, there is substantial evidence in the record to support the ALJ's finding that the Plaintiff's arm impairment is not totally disabling as defined in the Act, and that she remains capable of performing a range of sedentary duty work with no significant use of the right arm.

In addition, the issue of disability determination is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(3). The ALJ weighed Dr. Togut's opinions, as well as the relevant, objective medical evidence and concluded that the Plaintiff was not completely disabled. *See Corly v. Barnhart*, 102 Fed. App'x 752 (3d Cir. 2004); *see also Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1999) (holding that a statement by a treating physician deeming a plaintiff "disabled" or "unable to work" is not dispositive. An ALJ must review all the medical findings and other evidence and weigh it against the opinion of the treating physician).

The ALJ stated that she considered the objective evidence of record along with the Plaintiff's testimony and concluded that the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but not to the intensity, persistence and limiting effects as alleged by the Plaintiff. (R. 17-20). The ALJ found that the Plaintiff's description of her symptoms are not entirely credible. (R. 19).

A May 2003 EMG revealed that the Plaintiff suffered from right carpal tunnel syndrome and the development of right thoracic outlet syndrome. (R. 130-32).

On June 27, 2003, Dr. James Mattucci performed right carpal tunnel release surgery. (R. 130, 139). The Plaintiff returned to work four to six weeks after the surgery. (R. 130). The work involved repetitive hand gripping and reaching and throwing materials. (R. 130). These activities exacerbated the Plaintiff's symptoms, however there was no limited duty work available. (R. 130).

The Plaintiff underwent an EMG and nerve conduction studies on November 11, 2003. (R. 130-32). An electroneuromyographic study revealed bilateral and moderate median nerve neuropathies, and moderate to significant right brachial plexus neuropathy. (R. 132). An EMG of the upper extremities was normal except for mildly reduced motor unit

interference patterns in the opponens pollicus muscles bilaterally.  (R. 132).

The Plaintiff treated with Vincent J. DiGiovanni, M.D., in November 2003.  (R. 135).  Upon examination, the Plaintiff had motor power at 4+/5, no gross atrophy, a positive Tinel's sign, and positive E.A.S.T. test (a test used to diagnose thoracic outlet syndrome) of the right upper extremity.  (R. 135).  Dr. DiGiovanni diagnosed dysesthesia in the right hand, questionable, but doubtful, thoracic outlet syndrome v. compression neuropathy and Guyon triangle on the right v. ulnar entrapment syndrome.  (R. 135).  Dr. DiGiovanni prescribed medications and recommended that the Plaintiff use hot, moist soaks on her elbow and wrist.  (R. 135).

The Plaintiff next argues that the ALJ erred by according significant weight to the opinion of Dr. Mandel.  (Doc. 14 at 15-16).  The Plaintiff underwent an independent medical examination with Dr. Mandel on May 24, 2004.  (R. 137-43).  Upon examination, the Plaintiff had positive Adson's and Tinel's signs on the right over both median nerves of the wrists with a surgical scar over the right median nerve.  (R. 140).  She had intrinsic hand weakness on the right hand involving both median and ulnar muscles.  (R. 140).  There was no evidence of any incoordination, tremors or abnormal movements, she had full range of motion of her back and back, negative straight leg raising and no evidence of any Waddell findings (a test used to evaluate backache patients).  (R. 140).

Dr. Mandel noted that the objective findings confirm bilateral carpal tunnel and right thoracic outlet syndrome.  (R. 140).  Dr. Mandel determined that the Plaintiff is capable of performing sedentary work with no reaching overhead, grasping or fine manipulation.  (R. 141-43).

The ALJ accepted Dr. Mandel's opinion in part.  (R. 19).  Dr. Mandel found that the Plaintiff has no limitations with sitting, standing or walking, can occasionally perform postural activities and is unable to reach overhead, cannot grasp or do fine manipulation.  (R. 19).  The ALJ modified Dr. Mandel's opinion and limited the restrictions to the Plaintiff's right side only.  (R. 19).

The ALJ also considered the opinion of the state-agency physician.  (R. 20).  The

state-agency physician completed a Physical RFC Assessment in September 2005 and determined that the Plaintiff was capable of performing light duty work. (R. 168-75). The ALJ found that the Plaintiff was more limited than this determination and concluded that the Plaintiff is capable of performing a limited range of sedentary work. (R. 20).

The Plaintiff's last contention of error is that the ALJ erred by accepting the vocational expert's testimony. A hypothetical question must include all of a claimant's impairments which are supported by the record; one which omits limitations is defective and the answer thereto cannot constitute substantial evidence to support denial of a claim. *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). However, "[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).

In response to the ALJ's hypothetical questions, the vocational expert testified that the Plaintiff would be capable of performing work as a hand packer, visual inspector or basic sorter. (R. 218-19). The Plaintiff argues that the *Dictionary of Occupational Titles* does not include the jobs of visual inspector and basic sorter, but only includes the jobs of inspector and sorter. (Doc. 14 at 17-18). The Plaintiff notes that there are over 250 types of inspector jobs and 24 types of sorter jobs listed in the *Dictionary of Occupational Titles*. As defendant notes, the Plaintiff places undue emphasis on the words "visual" and "basic." (Doc. 15 at 18). The defendant states that the jobs of inspector and sorter exist in the *Dictionary of Occupational Titles*, though not listed as "visual inspector" or "basic sorter." (Doc. 15 at 18). The vocational expert was apprised of all of the Plaintiff's limitations when rendering her opinion and determined that the Plaintiff was capable of performing work despite her limitations. (R. 217-21).

The Plaintiff acknowledges that there is a hand packer position listed in the *Dictionary of Occupational Titles*. However, the Plaintiff states that she would not be able to perform such work because pushing, pulling and feeling with the upper extremities is an important ability necessary for the position. (Doc. 14 at 18-19). The vocational expert

9

testified that, based on her personal evaluation of the identified jobs and the *Dictionary of Occupational Titles*, they do not involve pushing, pulling and feeling. (R. 220-21). The vocational expert stated that the identified jobs only require using the hands for gross manipulation and not for feeling. (R. 220-21).

The Plaintiff states that when a vocational expert's testimony is inconsistent with the *Dictionary of Occupational Titles*, substantial evidence must support the ALJ's reliance on the vocational expert's testimony in determining that the claimant is not disabled. *See Boone v. Barnhart*, 353 F.3d 203 (3d Cir. 2003); (Doc. 14 at 20).

In the present matter, the ALJ's hypothetical questions included all of the Plaintiff's limitations supported by the record and she accounted for these limitations when rendering her RFC determination. Substantial evidence supports the ALJ's determination that the Plaintiff remains capable of performing work as a hand packer, visual inspector or sorter.

## VI.   RECOMMENDATION.

Based upon the foregoing, it is respectfully recommended that Plaintiff's appeal be **DENIED**.

        s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:  August 20, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNA MASHER, | : | CIVIL ACTION NO. **1:CV-07-2016** |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : | |
| Defendant | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 20, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                          **s/ Thomas M. Blewitt**
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**

**Dated: August 20 2008**